The opinion of the Court was delivered by
Frost, J.
On the trial of this case, the jury were instructed that they should not include in the assessment of the benefits and advantages incident to the location of the Rail Road through the defendant’s land, the speculative or saleable increase in value which might be attributed to the construction of the road. The first impression of the force of the arguments which induced this conclusion, has been removed by reflection; and 1 proceed to state the reasons why the Circuit decision should be reversed.
In the argument of the case, the effect of the terms of the charter has not been sufficiently weighed. That law must control the judgment of the Court, (11 Stat. 327). It directs that the commissioners or jury, “in making the valuation, shall take into consideration the loss or damage which may occur to the owner, in consequence of the land or right of way being taken; and also the benefit or advantage he may receive from the establishment or erection of the Rail Road or works, and shall state, particularly, the nature and amount of each; and the excess of loss or damage, over and above the benefit and advantage, shall form the measure of valuation of said land or right of way.”
What is a benefit or advantage to the owner of land, which he may receive by the construction of the road ? The only direct and immediate benefit of a Rail Road to an owner, through whose land it may pass, is the facility it affords in carrying the produce of the land to market, and the cheapness and expedition *437 of travelling. The most important advantages are incidental. Of these, incomparably the greatest, in a pecuniary view, is the enhanced value imparted to real estate along the line of the road. It forms the chief inducement for subscriptions to the undertaking. It was prominently in the view of the Legislature, in granting the charter, as an expected benefit to the owner, whose land might be taken for the construction of the road, and could not have been overlooked. Yet it is not excepted from the benefits and advantages to be assessed. Any and every benefit and advantage, by the terms of the Act, is the subject of assessment. It is plain, by the assessment which is directed to be made, that it was intended to provide compensation to the owner of the land, and no more, tie was to make no gain or profit from the Company. Compensation is an equivalent for property taken, or for an injury. It must be ascertained by estimating the actual damage the party has sustained. That damage is the sum of the actual value of the property taken and of the injury done to the residue of the property, by the use of that part which is taken, less the benefit which accrues to the residue of the said property by the use of that which is taken. The benefit is, in part, an equivalent to the loss and damage. The loss and damage of the defendant is the value of the land the Company has taken and the injury which the location and use of the road, through his tract, may cause to the remainder. The amount which may be assessed for these particulars, the Company admits that it is bound to pay. But, as a set off, it claims credit for the benefit the defendant has received from the construction of the road. That benefit may consist in the enhanced value of the residue of his tract. When the Company has paid the defendant the excess of his loss or damage over and above the benefit and advantage he has derived from the road, he will have received a just compensation.
It is objected that the enhanced saleable value of the land should not be assessed as a benefit to the defendant, because it is precarious and uncertain. The argument admits that the enhanced value, if permanent, should be assessed. But whether *438 the appreciation is permanent and substantial, or transient and illusory, is a subject about which the Court is not competent to determine. It must be submitted to a jury, who will give credit to the Company, according to the circumstances.
The argument is not tenable that an increased saleable value is no benefit to the owner of land unless he sells it. This is true, if it be assumed that the price will decline. The chance of this is estimated by the jury, in the amount which they may assess for that benefit. The sum assessed is, therefore, (so far as human foresight can anticipate the future,) the exponent of the substantial increase of the value of the land. This is a benefit to the owner, by enlarging his credit and his ability to pay his debts or provide for his family, in the same manner and to the same extent as if his fortune was increased by an acquisition of property.
But the argument most strenuously urged, is, that the public benefits, expected from the construction of the road, formed the consideration for the grant of the charter; and of these expected benefits, the most important was the enhanced value of the land along the line of the road : and as a public benefit is the aggregate of the benefit of individuals, the Company is precluded, by its contract, from claiming, against the defendant, any assessment for the increased value of his land. No such stipulation is found in the charter. On the contrary, it appears that the owner of the land taken by the Company, is to be assessed for any benefit, without exception, that he may receive from the construction of the road.
The only other argument which will be noticed is, that it is unjust and oppressive to the defendant to set off his damage and loss against the increased value of the land; because, thereby, his benefit is extinguished, while contiguous owners enjoy that benefit. The State has invested the Rail Road Company with its eminent power to take private property for a great public work. The Company is bound to make compensation. This is all the defendant can in reason demand. He cannot require a *439 premium. If his neighbors are more benefited by the construction of the road than he may be, that is no loss to him.
It will be seen, by reference to the volumes of English Railway cases and the United States Digest, that, in England and many of the States, charters are granted frequently to Rail Road and Turnpike Companies, with provisions for compensation, on the same principle as that in the charter of the Greenville and Columbia Rail Road Company. In 8 Barr (Penn. Reports), will be found the case of the Pennsylvania Rail Road Co. vs. Reiley, in which the principle is recognised, (it was not made a point in the case,) as fulfilling the constitutional injunction, that just compensation shall be made for private property, taken for public purposes.
The expense of fencing along the road, when it passes through fields, is properly an item of damage. The necessity of it for the protection of the slock of the owner from injury by the trains, and for the security of the crop, results immediately from the construction of the road. It will be found assessed as “damages” in the cases of the Penn. R. R. Company vs. Reiley, (8 Barr, 445); The Queen vs. The South Holland Drainage Committee, 35 Eng. C. L. R. 422); and The Queen vs. The Eastern Counties Railway Company, (42 Eng. C. L. R. 713).
The jury were properly instructed, in estimating the damage to the tract by the construction of the road through the settlement and fields of the defendant, to have regard to the several varying estimates of the depreciation of the tract, by such location of the road. This is an incidental damage; but the benefit of the road, by increasing the saleable value of the land, is also incidental. The witnesses had appraised the increased value of the defendant’s land by the rise in price, per acre, of contiguous lands. That would be the measure of benefit to the defendant, if the road had not been constructed through his land. Al. the witnesses agreed that this was a damage, to the tract. In order to anive at a just conclusion of the benefit received by the defendant, it was necessary to set off, against the incidental appreciation of adjoining lands, the incidental depreciation of the defendant’s land by the construction of the road through it. How *440 much this lessened the value of the defendant’s land, could not otherwise be expressed than by the effect it would have in diminishing the price, the witnesses would be willing to give for that tract.
The defendant had sold off three portions of his tract to as many adjoining owners. It was proved, that the situation or convenience of the adjoining tracts, made it very important for the owners to add to their tracts the pieces of land which they purchased from the defendant. One of them said, that the price paid for the portion he purchased was wholly unaffected by any consideration of the Rail Road. He would have given as much if the road had not been built. In reference to the sale of the portions of the defendant’s land, under these circumstances,' the jury were properly advised, that, if the prices obtained were caused by an accidental demand, unconnected with the construction of the Rail Road, the Company should not have credit in the assessment for an advantage not attributable to the road.
The motion is granted.
Evans, Wardlaw and Withers, JJ. concurred.
O’Neall and Whitner, JJ. being the President and a Director of the Company, neither heard nor gave any opinion.

Motion granted.